IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IOAN PAUL OIEN,

   Plaintiff,

 v.

STATE OF OREGON; DEPARTMENT OF
CORRECTIONS; TWO RIVERS
CORRECTIONAL INSTITUTION;
CORPORAL DAVIS,

   Defendants.

No. 2:17-cv-00978-HZ

OPINION & ORDER

Ioan Paul Oien
SID #20316441
8291 Beach Access Road
Umatilla, Oregon 97882

  Plaintiff Pro Se

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Ellen F. Rosenblum
ATTORNEY GENERAL
Shannon M. Vincent
SENIOR ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

Attorneys for Defendants

HERNANDEZ, District Judge:

Plaintiff Ioan Paul Oien, an inmate at the Two Rivers Correctional Institution (TRCI), brings this action against the State of Oregon, the State's Department of Corrections, TRCI, and Corporal Davis, contending that Davis sexually assaulted Plaintiff during an unclothed strip search and that Plaintiff has been retaliated against for filing this lawsuit. Defendants move for summary judgment on the basis that Plaintiff has failed to exhaust his administrative remedies and that all Defendants except for Davis are not proper Defendants in this action. Because I agree with Defendants on both issues, I grant Defendants' motion.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections (ODOC) on February 16, 2017, moving to TRCI on March 15, 2017. Arnell Eynon Decl. ¶¶ 4, 19, ECF 19. In his Amended Complaint, Plaintiff contends that on April 20, 2017, after a visit at TRCI from his grandmother Cathy Nelson, Davis strip searched him inside the bathroom for no reason and while doing so and after putting on latex gloves, stuck his finger in Plaintiff's "bottom." Am. Compl. ¶ 6. Plaintiff alleges that he contacted Behavioral Health Services, but they did not help him. *Id.* He asked to talk to a counselor and as of the filing of the Amended Complaint on August 28, 2017, "it has still not happened." *Id.* Plaintiff alleges he was told, however, that

Davis was going to get terminated from his job because of his unprofessional conduct and that the officers in charge would insure that Davis stayed away from Plaintiff.  *Id.*  Despite this assurance, Plaintiff alleges that Davis did not get terminated and still works at TRCI as a corrections officer.  *Id.*

Plaintiff contends that although he was told a detective would talk to him "right away," it took five months for that to occur.  *Id.*  Then, Plaintiff asserts, when the detective came, he treated Plaintiff "very badly," threatened him, and told the officers in charge to retaliate against him.  *Id.*  According to Plaintiff, he has been retaliated against and threatened.  *Id.*  In one alleged incident, officers placed him back in his cell with a cellmate after the cellmate assaulted him and in contravention of his need for a single cell.  *Id.*  Moreover, "TRCI" moved Plaintiff to a different unit for no reason in retaliation for filing the lawsuit.  *Id.*  As a result of the move, he lost his prison job.  *Id.*

Other than these allegations in his Amended Complaint, Plaintiff submits a Declaration in which he states that Davis performed an unclothed search on Plaintiff on August 20, 2017[1] and "stuck his finger up inside my bottom."  Pl.'s Decl. ¶ 8, ECF 25.  The Declaration does not address any of the alleged retaliation facts.

Based on his allegations, Plaintiff contends that Davis violated his Eighth Amendment rights and that "Defendants, TRCI, Corporal Davis, and DOC" have retaliated against him in violation of his First Amendment rights.  Am. Compl. ¶¶ 8, 10.  He seeks declaratory and injunctive relief as well as noneconmic and punitive damages.  *Id.*

---

[1]  It is unlikely the incident occurred on this date as Plaintiff's original Complaint was filed on June 21, 2017, before August 20, 2017.

3 - OPINION & ORDER

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA). Additionally, Defendants argue that the State of Oregon, the ODOC, and TRCI are improper Defendants because they are entitled to Eleventh Amendment immunity and are not "persons" subject to a claim brought under 42 U.S.C. § 1983. Plaintiff does not contest the arguments made as to the State of Oregon, the ODOC, and TRCI. Plaintiff contends, however, that he reported the sexual assault to the Prison Rape Elimination Act (PREA) Hotline and that because appeals were either unnecessary or would have been futile, he has satisfied the exhaustion requirement.

I. Proper Defendants

The Eleventh Amendment bars a citizen from bringing suit against his own state, or state agency or department, in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Micomonaco v. State of Wash.*, 45 F.3d 316, 319 (9th Cir. 1995). Although there are exceptions, the Supreme Court has made clear that Congress did not abrogate the states' Eleventh Amendment immunity by enacting section 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). In addition, the State of Oregon has not consented to be sued or done anything to waive its immunity in this action. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.") (internal quotation marks omitted). The law is clear that the Eleventh Amendment bars Plaintiff's claims against the State of Oregon, the ODOC, and TRCI in this Court because Oregon has not consented to be

sued here for § 1983 claims.

Additionally, § 1983 allows suits against state and local officials who have violated federal law but does not allow claims against states or state agencies. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute") (citing *Will*, 491 U.S. at 70).

Because Davis is the only properly named Defendant, I grant Defendants' motion for summary judgment as to all other Defendants.

II. Exhaustion

    A. PLRA Standards

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, however, only as long as "administrative remedies . . . are available." *Ross v. Blake,* 136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Exhaustion is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant has the burden to prove that "there was an available administrative

remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Id.* at 1166, 1172.

B. Discussion

In support of its motion, Defendants explain that under ODOC regulations, grievances are processed under ODOC Administrative Rules (O.A.R.), Chapter 291, Division 109. *See generally* Eynon Decl., Ex. 2. Under OAR 291-109-0149(1)(a), if an inmate is unable to resolve an issue through informal communications, the inmate may seek resolution of the issue by submitting a written grievance using the department's inmate grievance form. Inmates may grieve, among other things, inappropriate sexual contact between an ODOC employee and an inmate. O.A.R. 291-109-0140(2)(a), (g). While there is ordinarily a thirty-day time limit to file a grievance, there is no time limit for submitting a grievance alleging sexual abuse. O.A.R. 291-109-0150, O.A.R. 291-109-0175(4). The grievance must contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." O.A.R. 291-109-0140(1)(b).

If the initial grievance does not resolve the issue, the inmate may appeal any grievance response to the functional unit manager. O.A.R. 291-109-0170(1)(b). The inmate must complete a grievance appeal form and file it with the grievance coordinator within fourteen days from the

7 - OPINION & ORDER

date that the grievance coordinator mailed the grievance response to the inmate. *Id.* If still unsatisfied, the inmate may appeal the functional unit manager's decision by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of the date that the grievance coordinator sent the first grievance appeal response to the inmate. O.A.R. 291-109-0170(2)(c). The Assistant Director's or designee's decision on an inmate's grievance appeal is final and is not subject to further review. O.A.R. 291-109-0170(2)(f).

Although Plaintiff filed several grievances on a variety of issues between March 15, 2017, and August 28, 2017, he filed no grievances expressly directed to the alleged sexual assault by Davis. Eynon Decl. ¶¶ 20-33 & Exs. 4-17. On May 22, 2017, Plaintiff did file a grievance complaining that he had been "sexually assaulted here in DOC countless times and [had] asked to be in a single cell so it doesn't happen again." *Id.* ¶ 26 & Ex. 10. He complained that despite talking to officers about the problem, he kept being placed in "situations where I get sexually assaulted by inmates." *Id.*, Ex. 10. He did not mention a particular incident or Davis. *Id.* On June 1, 2017, this grievance was returned to Plaintiff for correction. *Id.* Specifically, he was asked to clearly state what single incident he was grieving and what staff member he told. *Id.* There is no evidence in the record showing that he re-filed the grievance.

Additionally, there are two discrimination complaints in July 2017 in which Plaintiff contended that Officer Herrara threatened him because of a lawsuit Plaintiff filed against him and because of a complaint Plaintiff had made against him. *Id.* ¶¶ 32, 33 & Exs. 16, 17. Herrara is not a Defendant in this action. Both of these complaints were returned to Plaintiff because they lacked specific enough information regarding the threatening comments or to support a complaint of discrimination. *Id.* The record does not indicate that Plaintiff took any further

8 - OPINION & ORDER

action on these complaints.

Based on this evidence, Defendants argue that Plaintiff failed to exhaust his administrative remedies for the claims in this case before filing his Complaint on June 21, 2017. Accordingly, Defendants argue that summary judgment for Defendants is warranted.

In response, Plaintiff states in his Declaration that he exhausted his administrative remedies because he called the PREA Hotline "and allowed that process to work." Pl.'s Decl. ¶ 2. He states that he was then "called down to the Captain[']s office and spoke to Captain Iverson who had informed me that Corporal Davis was being investigated." *Id.* ¶ 3. He contends that at that point, there was no need to invoke the ODOC grievance procedure and file a grievance under O.A.R. 291-109-0140(1)(b), because "informal communications" and "PREA Policy" were resolving the matter. *Id.* ¶ 4. Next, he was "then called down" to the office of the "Officer in Charge" and was told by Captain Iverson "that Corporal Davis was removed from the premises of the Institution and no longer worked for the Oregon Dept. of Corr." *Id.* ¶ 5. He contends that at this point, the administrative process "had worked" and he had completely exhausted his available remedies. *Id.* ¶ 6. He asserts that the requirements of the PLRA had been met by this process and the issue was ripe for a § 1983 claim. *Id.* Because thereafter he sought only monetary relief which is not allowable through the grievance system, it would have been futile for him to continue to file a grievance at that point. *Id.* ¶ 7 (alleging it "would have been fatile [sic] to even attempt what is already barred from attempting").

In his Response Memorandum, Plaintiff argues that Davis's being removed from "DOC property" and his ODOC employment being terminated "ended and satisfied the informal administrative process" because the "firing of Corporal Davis resolved the issue[.]" Pl.'s Resp. 1,

9 - OPINION & ORDER

ECF 24. He contends that because monetary damages are not an available remedy through the grievance system, it would be futile to require Plaintiff to proceed on the issue administratively.

Defendants acknowledge that if Plaintiff's contentions about reporting Davis to the PREA Hotline and Davis's termination were true, Plaintiff *might* be excused from grieving his claims. But, Defendants argue, Plaintiff's contentions are demonstrably false. He never reported his allegations regarding Davis to the PREA Hotline and Davis has not been terminated, or even reprimanded in connection with this case. In fact, he presently works at TRCI.

Defendants note that Plaintiff's contentions are short on specifics. He does not include the date or dates he made the PREA Hotline call or the dates he allegedly met with Iverson. He also provides an August 20, 2017 date of the incident which conflicts with the April 20, 2017 date alleged in his Amended Complaint. In contrast to Plaintiff's allegations, Defendants note that all phone calls made to the PREA Hotline number are recorded. Ericka Sage Decl. ¶ 10. Before filing this lawsuit, Plaintiff made only two PREA Hotline calls. *Id.* ¶ 11. Both occurred on May 29, 2017, one at 10:02 and the other at 10:11. *Id.*; *see also* Ex. 6 (audio file list showing date and time of Plaintiff's calls to PREA Hotline). Both of the calls related to issues Plaintiff had with a fellow inmate. *Id.* ¶ 12; *see also* Ex. 7 (sealed exhibit containing transcript of call), ECF 34.

Plaintiff did, however, file a Tort Claim Notice with the Oregon Department of Administrative Services dated June 9, 2017, before he filed this lawsuit. *Id.* ¶ 13; Ex. 8. There, he contended that in May of 2017[2], he was visited by a family member and after she left, Davis instructed Plaintiff to follow Davis to the bathroom. *Id.*, Ex. 8 at 1. Plaintiff alleged that Davis

---

[2] This is yet a third different date for this alleged incident.

10 - OPINION & ORDER

told him to take his clothes off and Plaintiff feared he was going to be raped. *Id.* He felt that Davis was "checking out my naked body and trying to touch me." *Id.* He made no specific allegation that Davis penetrated his "bottom." *Id.* He made general allegations that he had been sexually assaulted at TRCI "countless times," that he had been sexually abused by unnamed DOC staff and inmates, and that he had told captains and lieutenants of this information but they had only put him back in situations where he is raped or abused. *Id.* at 2. He concluded by saying that he had been sexually assaulted many times and these incidents have occurred in the unit, visiting area, bathroom, kitchen, and his cell. *Id.*

When the Tort Claim Notice was received, ODOC opened a PREA Watch Incident Report and referred the matter to the Oregon State Police (OSP) for investigation, in accordance with ODOC policies. *See* Sage Decl. ¶¶ 6, 7 & Exs. 3 & 4. The Report was opened on July 19, 2017. *Id.* ¶ 14; *see also* Ex. 9 (sealed exhibit containing copy of PREA Watch Incident Report), ECF 35. Additionally, ODOC conducted an internal investigation. Sage Decl., Ex. 9 at 3; Ex. 10 at 18. In an interview with Plaintiff on July 19, 2017, Plaintiff reported to the corrections officer conducting the interview that on April 21, 2017, Davis directed Plaintiff to the bathroom, ordered that he strip, and that while following instructions to bend over and cough, Davis touched his "bottom" with a gloved hand. *Id.*, Ex. 10 at 17 (sealed exhibit of OSP investigation report), ECF 36. The interviewer's report states that a review of the unclothed search log from April 2017 showed that Plaintiff was not one of the inmates chosen for an unclothed search. *Id.* But, the May 2017 logs showed that on May 14, 2017, he was subject to an unclothed search and nothing

was found.  *Id.*[3]  The interviewer's report notes that a PREA incident was created in "OMS" and due to the length of time between the alleged incident and the interview, Plaintiff was not examined by medical, no photographs were taken, and no evidence was gathered.  *Id.*

OSP investigated the matter.  *Id.* ¶ 15; Ex. 10.  The OSP investigator received his assignment on July 19, 2017.  *Id.*, Ex. 10 at 6.  He attempted to interview Plaintiff on two occasions, first on August 2, 2017, and again the next day.  *Id.* at 2-4.  Plaintiff was uncooperative both times, either refusing to say anything or stating that he had to have a legal representative present.  *Id.*  The investigator also met with Davis twice.  *Id.* at 2-5.  Ultimately, the investigator concluded that Plaintiff's complaints could not be substantiated.  *Id.* at 5.  No further action on Plaintiff's complaint appears to have occurred.

The undisputed facts show that Plaintiff never filed a grievance in accordance with ODOC policy concerning the alleged sexual assault by Davis, whether it occurred in April or May of 2017.   Plaintiff fails to provide the date of his alleged call to the PREA Hotline or the dates of his discussions with Iverson.  Thus, assuming that a call to the PREA Hotline is the functional equivalent of a grievance, there is no evidence in the record that the call occurred before filing suit.  There is no evidence in the record that his conversations with Iverson occurred before filing suit.  Thus, no issue of fact is created by Plaintiff's Declaration that his PREA Hotline call, if it occurred at all, was timely in the context of an exhaustion requirement.

Even if Plaintiff made the PREA Hotline call before filing the lawsuit in June 2017, there

---

[3]  Exhibit 10 contains the relevant visitor logs and unclothed search logs showing that Cathy Nelson visited Plaintiff on April 21, 2017, that Melissa Oien and Jeremy Oien visited on May 14, 2017, and that Plaintiff was subject to a "Visiting Room Unclothed Search" on May 14, 2017.  Sage Decl., Ex. 10 at 8-11 (search log), 13-15 (visitor logs).

is no admissible evidence that his complaint was successfully redressed.  Davis's Declaration states that he was not disciplined over the alleged incident and that he has had no break in his employment with ODOC.  Even Plaintiff himself, in his Amended Complaint, alleges that Davis is still employed at TRCI.  Am. Compl. ¶ 3 (alleging Davis is an officer at TRCI); ¶ 6 (alleging that Davis did not get terminated and still works at TRCI).  Plaintiff's statements that Iverson told him that Davis was being removed from TRCI and was no longer employed by the ODOC are inadmissible hearsay.  Iverson is not a party and because the State, the ODOC, and TRCI are not proper Defendants, Iverson's statement is inadmissible under Federal Rule of Evidence 801(d)(2).  Moreover, to support an argument that the alleged PREA Hotline call resulted in a favorable resolution, Iverson's alleged statement that Davis was terminated must be offered for its truth.  Thus, it is hearsay, with no applicable exception.  As a result, there is no admissible evidence in the record to show that Plaintiff's alleged PREA Hotline call resulted in a satisfactory outcome of his complaint.  The basis for Plaintiff's argument that informal channels resulted in a favorable outcome which obviated the need to file a grievance is not found in the record.

While Plaintiff did file the Tort Claim Notice, it was sent to an entirely separate state agency and not to the ODOC.  Thus, this notice did not satisfy Plaintiff's obligation to file a grievance.  The fact that the tort claim resulted in an outside investigation does not excuse Plaintiff's failure to file an internal grievance.  And, even if the Tort Claim Notice is treated as the functional equivalent of filing a grievance or making a call to the PREA Hotline, Plaintiff offers no evidence that he pursued his complaint after the OSP investigation concluded without substantiating his allegations.  Plaintiff offers no evidence that he requested further investigation or review or sought to appeal the OSP determination.  Finally, Plaintiff cannot claim to be

satisfied by the result of the OSP investigation which would excuse him from exhausting his administrative remedies when he received no concrete relief. *See, e.g., Cleveland v. Lam*, No. C-14-1369, 2005 WL 628340, at *4 (N.D. Cal. Feb. 12, 2015) ("Plaintiff's case is distinguishable from *Harvey [v. Jordan*, 605 F.3d 681 (9th Cir. 2010)] because at no point was Plaintiff led to believe that he would be removed from the high-risk medical classification and . . . at no point was Plaintiff satisfied by the partial grant of his appeals at the first level of review"); *Coles v. Cate*, No. 2:10-CV-1996 KJN P, 2011 WL 6260372, at *5 (E.D. Cal. Dec. 15, 2011) (plaintiff's alleged "satisfaction" with an administrative decision that granted no concrete relief did not excuse him from exhausting administrative remedies).

Finally, in regard to the First Amendment retaliation claim, there is no evidence of any grievance or pursuit of an equivalent administrative remedy other than the two complaints made about non-defendant Herrara which Plaintiff did not pursue.

Even when viewing the evidence in a light favorable to Plaintiff, there is no admissible evidence creating an issue of fact as to whether Plaintiff exhausted his remedies before filing suit or obtained some concrete relief that excused him from doing so. As a result, he has failed to properly exhaust his claims which are dismissed without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14 - OPINION & ORDER

CONCLUSION

Defendants' motion for summary judgment [18] is granted.

IT IS SO ORDERED.

Dated this 19 day of January, 2018

*Marco Hernandez*
Marco A. Hernandez
United States District Judge

15 - OPINION & ORDER